2010 ME 82

**Clement THERIAULT**

v.

**Kenneth C. BURNHAM, Sr.**

Supreme Judicial Court of Maine.

Argued: June 16, 2010.
Decided: Aug. 19, 2010.

Robert V. Hoy, Esq. (orally), Hoy & Main, P.A., Gray, ME, for Kenneth C. Burnham Sr.

John F. Lambert, Esq., Teresa M. Cloutier, Esq. (orally), Lambert Coffin, Portland, ME, for Clement Theriault.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

LEVY, J.

[¶ 1] This appeal arises from an award of damages for tortious interference with an expectancy based upon proof that an elderly person was unduly influenced to revise her will. We affirm the Superior Court's (Cumberland County, *Wheeler, J.*) judgment.

[¶ 2] Helen Dingley had known Clement Theriault for approximately thirty years when she prepared a will in 2001 that would devise to him her property in Naples known as Kent's Landing. She was then eighty-six years of age. Around the same time, Dingley became acquainted with Kenneth Burnham when she frequented his family's restaurant in Naples.

[¶ 3] Sometime in 2006, Dingley dismissed her longtime lawyer and hired Burnham's lawyer to prepare a new will. Dingley's new will revoked the 2001 will and named Burnham as the beneficiary of most of her estate, including Kent's Landing and the estate's residue. Dingley passed away in September 2007 at the age

of ninety-two. Her will was entered into probate in the Cumberland County Probate Court the following month.

[¶ 4] Theriault filed suit against Burnham in January 2008, alleging that Burnham had tortiously interfered with his expectancy to inherit Kent's Landing. A jury trial was held in the Superior Court in October 2009. The sole question before the jury was whether Burnham had unduly influenced Dingley to change her will. Burnham requested that the court instruct the jury that evidence of a confidential relationship also proved undue influence unless Burnham proved that "it is at least as likely that undue influence did not exist as it is likely that [it] did." Over Burnham's objection, the court rejected the proposed instruction and instead instructed the jury as follows:

> If Clem Theriault shows by a preponderance of the evidence that Kenneth Burnham had a confidential relationship with Helen Dingley then undue influence is proven unless Kenneth Burnham proves by a preponderance of the evidence ... that undue influence did not exist.

[¶ 5] The jury found that Burnham had unduly influenced Dingley to change her will to leave Kent's Landing to him, and the court entered a judgment in favor of Theriault, consistent with the verdict, in the amount of $635,000.[1] In this appeal, Burnham challenges (1) the sufficiency of the evidence, and (2) the court's instruction to the jury regarding undue influence.

1. Sufficiency of the Evidence to Support the Verdict

[¶ 6] Burnham contends that there was insufficient evidence presented

---

1. Burnham, Theriault, and the estate's personal representative agreed to sell Kent's Landing to the town of Naples in August 2009. The damages, to which both parties stipulated at trial, appear to reflect the sale price of the property minus appropriate costs.

for the jury to find that he unduly influenced Dingley. Undue influence is defined as "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation[ship] between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *See DesMarais v. Desjardins*, 664 A.2d 840, 843 (Me.1995) (quotation marks omitted). Our decisions establish that undue influence may be presumed if the plaintiff shows by a preponderance of the evidence that a confidential relationship existed between the defendant and the decedent. *See Avery v. Whatley*, 670 A.2d 922, 925 (Me.1996); *Ruebsamen v. Maddocks*, 340 A.2d 31, 34, 36–37 (Me.1975). A confidential relationship is one in which an individual placed trust and confidence in the defendant and there was a great disparity of position and influence in the relationship. *See Ruebsamen*, 340 A.2d at 36.[2]

[¶ 7] Contrary to Burnham's contentions, sufficient evidence exists in the record from which the jury could conclude that Burnham unduly influenced Dingley. Specifically, the jury received evidence that (1) Burnham pressured Dingley to change her will, threatening to leave her unassisted if she did not leave Kent's Landing to him; (2) Burnham took Dingley to his lawyer to have her will changed; (3) Burnham separated Dingley from others who might influence her decision; (4) Burnham began to evict another devisee from Kent's Landing over Dingley's expressed preference and without her consent; (5) Burnham's lawyer represented Dingley in the eviction proceedings; (6) Burnham would not let Dingley see the new will after its execution; (7) Burnham was Dingley's power of attorney and health care agent; and (8) Dingley was dependent on Burnham to transport her, cook her meals, and write all of her checks. This evidence also supports a finding that Burnham had a confidential relationship with Dingley.

### 2. Jury Instruction on Undue Influence

[¶ 8] Burnham also argues that the Superior Court erroneously instructed the jury regarding the relationship between proof of a confidential relationship and a finding of undue influence. He contends that this issue is controlled by *Ruebsamen*, 340 A.2d at 37, which held that the presumption of undue influence arising from proof of a confidential relationship disappears "if the factfinder is persuaded that the probabilities as to undue influence are in equilibrium." The court's instruction to the jury, which required Burnham to prove by a preponderance of the evidence that undue influence did not exist in order to overcome the presumption, was plainly contrary to this standard. As Theriault asserts, however, the instruction was in accord with M.R. Evid. 301(a), which states: "In all civil actions and proceedings, except as otherwise provided by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

[¶ 9] The approach applied in *Ruebsamen* was based on *Hinds v. John Hancock Mut. Life Ins. Co.*, 155 Me. 349, 364, 155 A.2d 721, 730 (1959), which stated:

> Though the court's instruction to the jury did not mention proof of receipt of a benefit, it was undisputed that Dingley devised Burnham the residue of her estate and Burnham does not challenge the court's jury instruction on the basis of this omission.

---

**2.** Pursuant to *Ruebsamen v. Maddocks*, 340 A.2d 31, 37, the proponent must prove both the existence of a confidential relationship and "the superior party's receipt of a benefit flowing from the relation[ship]" in order to create a presumption of undue influence.

[A] disputable presumption persists until the contrary evidence persuades the factfinder that the balance of probabilities is in equilibrium, or, stated otherwise, until the evidence satisfies the jury or factfinder that it is as probable that the presumed fact does not exist as that it does exist.

More recently, we have held in other contexts that Rule 301 supercedes the *Hinds* rule regarding presumptions. *See Estate of Lewis*, 2001 ME 74, ¶ 6, 770 A.2d 619, 622; *Poitras v. R.E. Glidden Body Shop, Inc.*, 430 A.2d 1113, 1119 n. 1 (Me.1981).[3] M.R. Evid. 301(a) applies to presumptions "[i]n all civil actions and proceedings, except as otherwise provided by statute or by these rules." There is no statute or rule that exempts an action for undue influence from the rule. Thus, the *Ruebsamen* equilibrium standard has been superceded by Rule 301(a)'s preponderance standard.

[¶ 10] Burnham, citing *In re Will of Fenwick*, 348 A.2d 12 (Me.1975), counters that Rule 301 does not apply because proof of a confidential relationship merely creates a permissible *inference* of undue influence, rather than a presumption. We are not persuaded.

[¶ 11] *In re Will of Fenwick* held that in a will contest, evidence of a confidential relationship between the testator and the person who is asserted to have influenced the testator permits an inference of undue influence, but does not give rise to a presumption of undue influence. 348 A.2d at 15. Our jurisprudence draws a clear distinction, however, between will contests and actions for tortious interference.[4] The complainant in a will contest seeks to set aside a testator's entire will, while the complainant in a civil tort generally seeks only monetary damages. For this reason, our decisions have adopted a more stringent standard of proof in will contest proceedings than in actions for tortious interference. *Compare Avery*, 670 A.2d at 925 (stating that a plaintiff in a tortious interference case must prove a confidential relationship by a preponderance of the evidence), *with Estate of Lewis*, 2001 ME 74, ¶ 7, 770 A.2d at 622 (stating that a plaintiff in a probate matter must prove a confidential relationship by clear and convincing

---

**3.** In *Estate of Lewis*, 2001 ME 74, ¶ 6, 770 A.2d 619, 622, we held that an appellant's reliance on the *Hinds* distinction between inferences and presumptions was misplaced because this precedent was rejected and eventually superceded by M.R. Evid. 301(a). Similarly, in *Poitras v. R.E. Glidden Body Shop, Inc.*, 430 A.2d 1113, 1119 n. 1 (Me. 1981), we held that M.R. Evid. 301 superceded the *Hinds* precedent regarding when burden of production has been satisfied.

**4.** Several jurisdictions have limited tortious interference claims arising out of the preparation of a will to instances where a will contest is not available or, if available, would not provide adequate relief to the injured party. *See Wilson v. Fritschy*, 132 N.M. 785, 55 P.3d 997, 1001–02 (App.2002) (describing an "emerging majority of case law" that limits intentional interference claims to when an adequate remedy does not exist in probate court); *see also Jackson v. Kelly*, 345 Ark. 151, 44 S.W.3d 328, 331–34 (2001) (declining to apply the tort because adequate relief was available to the injured party in the probate court); *DeWitt v. Duce*, 408 So.2d 216, 218 (Fla.1981); *In re Estate of Ellis*, 236 Ill.2d 45, 337 Ill.Dec. 678, 923 N.E.2d 237, 241–42 (2009); *Minton v. Sackett*, 671 N.E.2d 160, 162 (Ind.Ct.App.1996); *McMullin v. Borgers*, 761 S.W.2d 718, 719–20 (Mo.Ct.App.1988); *Garruto v. Cannici*, 397 N.J.Super. 231, 936 A.2d 1015, 1021–22 (App.Div.2007) (declining to address the issue of whether the tort was recognized in New Jersey but noting that adequate relief was available to the injured party in the probate court and the tort therefore could not apply). Because this appeal does not call upon us to address the continued vitality of our precedent permitting a plaintiff to choose between two causes of action with differing standards of proof, we do not address it further.

evidence and noting that a party's reliance on *Avery* was "misplaced" because *Avery* was "not a will contest"). The more demanding approach toward proof of undue influence embraced in *Fenwick* does not apply in the less demanding setting of this civil tort action.

[¶ 12] The Superior Court correctly applied M.R. Evid. 301 in its instructions to the jury.

The entry is:

Judgment affirmed.