MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2015 ME 5
Docket:        Aro-13-567
Submitted
  On Briefs:   October 27, 2014
Decided:       January 22, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, and HJELM, JJ.[*]

## CARLTON M. ALBERT JR.

v.

## DANIEL B. ALBERT

HJELM, J.

[¶1]  Carlton M. Albert Jr. appeals from a judgment entered in the Superior Court (Aroostook County, *Hunter, J.*) in favor of his brother Daniel B. Albert, following a non-jury trial.  Carlton contends that the trial court erred in finding that, when Carlton conveyed a parcel of land to Daniel in 1992, Daniel did not have a confidential relationship with him and that Daniel did not unduly influence him to convey the land.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  We view the record in the light most favorable to Daniel, the prevailing party.  *See Lyman v. Huber*, 2010 ME 139, ¶ 2, 10 A.3d 707.

---

[*] Silver, J., participated in the initial conference but retired before this opinion was adopted.

2

[¶3]   When Daniel and Carlton's father died in 1976, his company, Madawaska Brick & Block, was left in trust for the benefit of them, their three other brothers and their stepmother.  The company owned the land at issue.  Daniel bought the land from the company in 1984, and later that year conveyed it to Carlton in exchange for Carlton's shares in the company.

[¶4]  In 1991, Carlton was involved in an altercation and sustained various injuries, including brain trauma.  Because of his injuries, he was unable to continue working as a fisherman.  In order to protect the land from creditors' claims, Carlton asked Daniel to purchase it from him, and Daniel eventually agreed.  Carlton secured the services of an attorney, whom he knew, to represent him in the land conveyance.  Carlton's attorney drafted the deed in August 1991, and Carlton executed it in January 1992.  Carlton's attorney also prepared the transfer documents that indicated a land value of $15,000.  In exchange for receiving title to the land, Daniel released Carlton from indebtedness on a loan that Daniel had extended to Carlton in 1978 and on which Carlton had made no payments.  The balance on the loan, with interest, was in excess of $16,000.

[¶5]  Within several years after the 1992 conveyance, Carlton wanted to buy the property back from Daniel, but they could not agree on a price.  Daniel may have offered to make annual payments of $1,000 to Carlton, and they may have discussed the possibility that Daniel would build a residence on the land that would

include an apartment for Carlton's use. These discussions, however, were not part of the 1992 transaction. Because Carlton and Daniel did not come to terms, Daniel continues to own the land.

[¶6] In May 2010, Carlton commenced this action against Daniel, seeking imposition of a constructive trust on the land based on an allegation that in the 1992 land transfer, Daniel breached a confidential relationship existing between them.[1] *See* Horton & McGehee, *Maine Civil Remedies* § 9-3(d) at 210 (4th ed. 2004) ("A constructive trust may be imposed whenever one party who occupies a fiduciary or confidential relationship with another abuses the relation to benefit at the other's expense"); *see also Moulton v. Moulton*, 1998 ME 31, ¶ 8, 707 A.2d 74. Following a one-day trial held in October 2013, the court issued a written decision finding that at the time of the 1992 conveyance, Daniel and Albert did not stand in a confidential relationship and that, in any event, Daniel did not exert undue influence to acquire the land. Based on these and other findings, the court denied all claims for relief in Carlton's complaint and Daniel's counterclaim.

---

[1] In addition to his claim for breach of confidential relationship, Carlton asserted claims for unjust enrichment, breach of contract, rescission of contract, and fraudulent misrepresentation. Daniel filed a counterclaim for non-payment of a promissory note, defamation, issuance of a protection order and trespass.

4

[¶7]  Carlton timely appealed, arguing that the court erred in denying his claim for breach of a confidential relationship.[2]

## II.  DISCUSSION

[¶8]  A confidential relationship exists when (1) "an individual place[s] trust and confidence in" another and (2) there is "a great disparity of position and influence in the relationship."  *Theriault v. Burnham*, 2010 ME 82, ¶ 6, 2 A.3d 324; *see also Ruebsamen*, 340 A.2d at 35 (Me. 1975).  "The burden of persuasion as to the existence of a confidential relation rests on the party seeking to establish the existence of the relation."  *Ruebsamen*, 340 A.2d at 34.  When parties in a confidential relationship engage in a transaction that creates a "possible benefit" to the superior party, a presumption of undue influence arises and the burden shifts to the benefitted party to demonstrate affirmatively that he transacted with "entire fairness" and that the transaction was free of any undue influence affecting the other party's interests.  *Id.*  (quotation marks omitted).

[¶9]  As this legal framework applies here, Carlton first had the burden to demonstrate that at the time of the 1992 land conveyance, he and Daniel were in a confidential relationship.  If Carlton were to prove that contention, the burden then would shift to Daniel to prove that the transaction was entirely fair and that it was

---

[2]  Carlton's appeal does not address any aspect of the judgment entered against him other than the denial of his claim of breach of a confidential relationship, and Daniel has not filed a cross-appeal of the judgment entered against him on all counts of the counterclaim.

not affected by undue influence. The court found that Carlton did not sustain his burden of demonstrating the existence of a confidential relationship. The court also found that even if a confidential relationship existed, Daniel proved that he did not exert any undue influence on Carlton when he acquired the land in 1992. Because the court did not find that Daniel breached a confidential relationship, it declined to subject the land to a constructive trust.

[¶10] We review the trial court's findings of fact for clear error. *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 16, 55 A.3d 443; *Estate of Campbell*, 1997 ME 212, ¶ 6, 704 A.2d 329. Because Carlton bore the burden of proving that he had a confidential relationship with Daniel, Carlton must demonstrate here that the evidence compelled the court to find in his favor on that aspect of his claim. *St. Louis*, 2012 ME 116, ¶ 16, 55 A.3d 443. If Carlton was successful in establishing this preliminary showing, Daniel then would have the burden of proving that the conveyance was free of undue influence. We review the record to determine if the evidence supported the court's finding on this issue. *See Ruebsamen*, 340 A.2d at 35-36.

A. Confidential Relationship

[¶11] The court did not err in finding that at the time of the 1992 conveyance, Daniel and Carlton did not have a confidential relationship.

6

[¶12]   First, the evidence did not compel the court to find that in the 1992 transaction, Carlton placed actual trust and confidence in Daniel.   Although the two are brothers, Carlton obtained independent advice from an attorney, who had been a high school classmate, in order to protect his interests.   Carlton's attorney prepared the documents necessary to transfer title.   The court treated this as persuasive evidence that Carlton did not place trust and confidence in Daniel, but rather affirmatively sought independent advice and assistance elsewhere.

[¶13]   Further, as a general matter, the existence of a familial relationship, although a relevant consideration, does not by itself establish the level of trust and confidence that defines a confidential relationship.   *Ruebsamen*, 340 A.2d at 35; *Moulton*, 1998 ME 31 ¶ 5, 707 A.2d 74.   Carlton himself testified that his relationship with Daniel was always strained, and the evidence supports the court's finding that Carlton harbored resentment toward Daniel because of Daniel's successes in life.   Carlton has not always sought Daniel's advice, and when he did, he did not always follow it.   For his part, Daniel held some measure of misgivings toward Carlton, as evidenced by Daniel's insistence in 1983 that Carlton execute a promissory note to memorialize a loan from 1978.   The court was therefore entitled to conclude that Carlton had not met his burden of proving that he had placed trust and confidence in Daniel at the time of the conveyance in 1992.

[¶14] Second, the evidence did not compel the court to find that there was a great disparity of position and influence between Carlton and Daniel during the 1992 transaction. The conveyance was Carlton's own idea that he developed for his own reason: to protect the property from creditors. Carlton's choice to obtain independent legal representation then placed him on at least an equal footing with Daniel, who was not represented in the transaction. Although Carlton had suffered a head injury prior to the transfer, the court found, with evidentiary support, that by 1992 he had recovered from the injury, that he was competent to manage his affairs at the time, and that he fully understood the nature of the transaction.

[¶15] More generally, Daniel was more highly educated than Carlton: he had obtained a college degree and an M.B.A., and he had a successful career in business. Carlton, however, is four years older than Daniel;[3] he has some limited college education; he has held various jobs in several fields; and he has lived independently and has freely made his own life choices, even though some of them, as the court observed, were "imprudent." Daniel sometimes provided financial assistance to Carlton, often because of Carlton's poor financial decisions, but Daniel did not assume responsibility for Carlton's finances. These findings are supported by the evidence and entitled the court to conclude that, at least in the

---

[3] In its findings, the court referred to an age difference of three years. Any error affecting this finding is harmless.

context of the land conveyance, there was not a great disparity between the brothers' positions and influence.

[¶16] Therefore, on this overall record, the court was not compelled to find that the relationship between Carlton and Daniel had a fiduciary quality when Carlton conveyed the land to Daniel.

B.     Undue Influence

[¶17] The court also did not err in concluding alternatively that even if a confidential relationship did exist between Carlton and Daniel, the 1992 land transaction was not affected by undue influence. Undue influence is the "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relationship between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Theriault*, 2010 ME 82, ¶ 6, 2 A.3d 324 (alterations omitted) (quotation marks omitted).

[¶18] The record permitted the court to find that Daniel did not influence Carlton to transfer the land to him.[4] Carlton was the party who wanted to convey the property to Daniel so that it would be protected from his creditors. Carlton

---

[4] Carlton alleged that Daniel promised to build a house for Carlton on the property and to pay him $1,000 for each year the house was not built. The court found that if they had reached such an agreement, it was after the 1992 conveyance and that any such extrinsic agreements or promises were not associated with the land transaction itself.

then secured the services of an attorney of his choice to advise him on the transfer and to draft the deed. Further, Carlton's attorney prepared the deed four months before Carlton executed it, demonstrating that the transaction was not rushed and that Carlton had a significant amount of time to decide whether to proceed with it. Although Daniel came to own the property as a result of the transfer of title, he relinquished a claim against Carlton for indebtedness on a loan he had extended to Carlton in 1978. Carlton had not made any payments on the loan, and the outstanding balance actually exceeded the value of the property as found by the court, which was $15,000—findings that Carlton does not challenge here.

[¶19] Therefore, there is competent evidence in the record to support the court's alternative finding that even if Carlton and Daniel had been in a confidential relationship, Daniel had met his burden of proving an absence of undue influence. Because the court found that Carlton did not prove that his relationship with Daniel was confidential, it did not need to reach the question of whether Daniel had rebutted a presumption of undue influence. However, the court did not err when it found that Daniel proved that he transacted with "entire fairness" and that the conveyance was free of any undue influence affecting Carlton's interests.

The entry is:

Judgment affirmed.

**On the briefs:**

Toby D. Jandreau, Esq., Fort Kent, for appellant Carlton M. Albert Jr.

Daniel B. Albert, appellee pro se

Aroostook County Superior Court (Caribou) docket number RE-2010-20
FOR CLERK REFERENCE ONLY